UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
MARIE A. D'ITALIA,                                       Chapter 7
         DEBTOR.                                   Case No. 13-16051-WCH

**MEMORANDUM OF DECISION**

### I. INTRODUCTION

The matter before the Court is the "Restated Objection to Claim of Exemption" (the "Objection") filed by William C. Roberts ("Roberts") and the "Opposition of Debtor to Objection to Claim of Exemption" (the "Opposition") filed by Marie A. D'Italia (the "Debtor").[1] Roberts objects to the Debtor's claimed exemption under the Massachusetts Homestead Statute[2] on the basis of waiver. For the reasons set forth below, I will overrule the Objection.

### II. BACKGROUND

    A. Procedural History

The Debtor filed a voluntary Chapter 7 petition with all schedules and statements on October 16, 2013. On "Schedule A – Real Property" ("Schedule A"), she listed a single family residence located at 36 Studio Drive in Buzzards Bay, Massachusetts (the "Property") which she jointly owns with her spouse as tenants by the entirety. The Debtor estimates the value of the Property to be approximately $950,000.00. The Property is subject to the following encumbrances:

---

[1] Roberts' initial Objection to Claim of Exemption was overruled without prejudice for insufficient service.

[2] Mass. Gen. Laws ch. 188, § 1 *et seq.*

1

| Creditor's Name | Nature of the Lien | Amount of the Claim |
|---|---|---|
| Bank of New York Mellon, f/k/a The Bank of New York | Mortgage | $779,206.35 |
| Roberts | Judgment Lien | $539,000.00 |
| Perkins Paper, Inc. | Judgment Lien | $12,591.63 |

On "Schedule C – Property Claimed as Exempt" ("Schedule C"), the Debtor claimed an exemption in the Property pursuant to Mass. Gen. Laws ch. 188, § 1 in the amount of $500,000.00.

The Debtor appeared at the meeting of creditors held pursuant to 11 U.S.C. § 341(a) on November 20, 2013. The same day, Donald Lassman, the duly appointed Chapter 7 trustee, filed a Chapter 7 Trustee's Report of No Distribution indicating that there were no non-exempt assets available for distribution to creditors.

On December 19, 2013, Roberts filed the Objection. The Objection is one page long and simply states:

> The grounds for the this objection are as follows:
>
> A. The homestead exemption claimed by the Debtor is not authorized by law, because the Debtor has waived the exemption and because the Debtor has not recorded a declaration of homestead; and,
>
> B. The listed value of the property claimed as exempt is incorrect.[3]

The Debtor filed the Opposition on December 28, 2013, disputing the allegations of the Objection. Two days later, on December 30, 2013, the Debtor moved to avoid the judicial liens of both Roberts and Perkins Paper, Inc., but her motion was denied without prejudice because the

---

[3] Objection, Docket No. 28.

2

Debtor's calculation did not comply with 11 U.S.C. § 522(f)(2)(A).[4] The Debtor has not yet filed a renewed motion, but has indicated her intention to do so.[5]

I conducted a hearing on the Objection on January 10, 2014. At the hearing, Roberts' counsel explained that the basis of the alleged waiver was a guaranty signed by the Debtor and her non-debtor spouse.[6] Although counsel read a paragraph of this guaranty into the record, he neither submitted it to the Court nor offered any factual background to place it in context. In response, the Debtor's counsel emphasized that the lien in question is an execution, not a voluntary encumbrance, and that the purported waiver was not recorded in a manner to effectuate a termination of homestead rights under the statute.[7] At the conclusion of oral arguments, I took the matter under advisement, but ordered Roberts to "file a brief explaining the facts and circumstances surrounding the alleged waiver and attach a copy of said waiver and any other supporting documentation."[8]

On January 17, 2014, Roberts timely filed the "Brief of Creditor, William C. Roberts, in Support of Objection to Debtor's Homestead Claim" (the "Brief"). Notably, Roberts expressly

---

[4] *See In re Derocha*, 503 B.R. 553, 556-558 (Bankr. D.R.I. 2014) (explaining the proper application of the mathematical formula provided by 11 U.S.C. § 522(f)(2)).

[5] Trans. Jan. 10, 2014 at 6:6-9.

[6] *Id.* at 2-3.

[7] *Id.* at 6. The Debtor and Roberts both cite Mass. Gen. Laws ch. 188, § 7 as the statutory provision controlling the termination of homestead rights, but the Massachusetts Homestead Statute was substantially revised in 2010. The Estate of Homestead, 2010 Mass. Legis. Serv. Ch. 395 (S.B. 2405). These revisions, which took effect on March 16, 2011 and apply to cases filed after that date, *see* 11 U.S.C. § 522(b)(3)(A), moved the provisions governing termination of the homestead to Mass. Gen. Laws ch. 188, § 10. This error, however, does not materially affect the merits of their respective arguments.

[8] Docket No. 37.

abandoned all bases for his objection to the Debtor's homestead other than the alleged waiver. The Debtor did not file a response to the Brief.[9]

    B. <u>Factual History</u>

Although the Brief is vague as to the timeline of events, at some point pre-petition, the Debtor, her spouse, and Roberts entered into negotiations with respect to acquiring a leasehold in property owned by an entity controlled by Roberts for the purpose of opening a Dunkin Donuts franchise location. In addition to the leasehold, Roberts agreed to provide a restricted purpose loan of up to $250,000 to "build out" the leasehold, cover certain startup costs of the Dunkin Donuts location, and improve certain commercial real estate in Wareham, Massachusetts which the Debtor and her spouse pledged as collateral for the loan (the "Wareham Property"). To facilitate their agreement, the Debtor and her spouse executed (1) a commercial lease; (2) a loan agreement; (3) a promissory note; (4) a mortgage; and (5) a personal guaranty of their obligations under the prior documents (the "Guaranty"). The Guaranty contains the following waiver (the "Waiver"):

> The Guarantor also irrevocably waives, to the fullest extent permitted by law, all defenses which at any time may be available in respect of the Guarantor's Obligations hereunder by virtue of any homestead exemption, statute of limitations, valuation, stay, moratorium law or other similar law now or hereafter in effect.[10]

Things apparently did not go as planned, and Roberts brought suit under Mass. Gen. Laws ch. 93A, § 11 against the Debtor and her spouse in the Norfolk County Superior Court for misrepresentations made at the outset of their dealings (the "Superior Court Action"). He

---

[9] Because the Debtor did not file a response to the Brief, I presume that the Debtor does not contest Roberts' statement of facts. The point, however, is likely moot in light of my conclusion that those facts do not support Roberts' objection to the Debtor's claim of exemption.

[10] Exhibit A, Docket No. 42 at 14-15.

ultimately obtained a judgment and execution in the Superior Court Action, which the Barnstable County Sheriff levied against the Property on August 1, 2012. Roberts also foreclosed the mortgage on the Wareham Property, resulting in a large deficiency claim.

### III. POSITIONS OF THE PARTIES

#### A. Roberts

Roberts argues that under the above quoted passage of the Guaranty, the Debtor unequivocally waived her homestead rights with respect to her obligations stemming from their various agreements. Though he freely admits that the Guaranty was not recorded, Roberts contends that a waiver in this context is distinct from the concept of a termination of the homestead under the Massachusetts Homestead Statute. He posits that Mass. Gen. Laws ch. 188, § 10 only applies to releases which completely eliminate homestead protection with respect to all other creditors. In contrast, Roberts seeks a personal exception from the homestead protection that is otherwise available to the Debtor based on their contractual agreement. Thus, he asserts that such a waiver need not comply with Mass. Gen. Laws ch. 188, § 10 and does not offend public policy in light of its limited impact on the availability of the statutory protections.

#### B. The Debtor

From the outset, the Debtor emphasizes that Roberts' lien is merely a judgment lien, and not a voluntary encumbrance based upon any executed documents. Furthermore, she takes a broader reading of the Massachusetts Homestead Statute than Roberts, concluding that a waiver of homestead rights must be a viewed as a "release" of the homestead under the statute. Therefore, pursuant to Mass. Gen. Laws ch. 188, § 10, the Debtor asserts that the Waiver must be recorded in the appropriate registry to be effective.

## IV. DISCUSSION

Because no one, Roberts included, has challenged the underlying validity of the Debtor's homestead exemption, my analysis begins with the premise that the Property is exempt pursuant to Mass. Gen. Laws ch. 188, § 1 *et seq.*[11] To properly set the stage, however, I note that Mass. Gen. Laws ch. 188, § 10(a) provides that an estate of homestead may be terminated by any of the following acts:

> (1) a deed to a non-family member conveying the home, signed by the owner and a non-owner spouse or former spouse residing in the home as a principal residence as of the date of the deed;
>
> (2) a recorded release of the estate of homestead, duly signed and acknowledged by the owner and a non-owner spouse or former spouse residing in the home as a principal residence as of the date of the release;
>
> (3) the abandonment of the home as the principal residence by the owner, the owner's spouse, former spouse or minor children, except that such abandonment shall terminate only the rights of the persons who have abandoned the home; provided, however, that no person in military service as defined in 50 U.S.C. appendix, section 511 shall be deemed to have abandoned the home due to such military service;
>
> (4) in the case of a home the title to which is held in trust, by either: (i) the execution of a deed or a release of homestead by the trustee; or (ii) action of a beneficial owner identified in the declaration, who is not a minor child, taken in the same manner as provided in clauses (2) and (3); or
>
> (5) the subsequent recorded declaration of an estate of homestead under section 3 on other property, except that such declaration shall terminate only the rights of the owner making such subsequent declaration and the rights of that owner's spouse and minor children who reside or intend to reside in the other property as their principal residence.[12]

There is no question that Roberts did not comply with this section and thus did not effectuate a "termination" of the Debtor's homestead. Instead, the issue framed by the parties is whether a

---

[11] *See* 11 U.S.C. § 522(l) ("Unless a party in interest objects, the property claimed as exempt on [Schedule C] is exempt.").

[12] Mass. Gen. Laws ch. 188, § 10(a).

waiver is (or rather, needs to be) a "release" under Mass. Gen. Laws ch. 188, § 10(a)(2), requiring the Waiver to have been duly recorded for it to be enforceable. Roberts responds in the negative, asserting that waiver is a distinct legal concept that falls outside the scope of "termination" as embodied in that section. Assuming, *arguendo*, that he is correct and that state law does not require a waiver of homestead to comply with Mass. Gen. Laws ch. 188, § 10(a)(2) to be effective, I find that the Bankruptcy Code nonetheless renders the Waiver unenforceable in this case.

From the outset, it is important to recognize that Roberts is currently the holder of an execution, *i.e.*, a judicial lien, and not a mortgage.[13] The Bankruptcy Code does not offer the same protections to judicial lienholders that are afforded to those who hold consensual or statutory liens. Indeed, 11 U.S.C. § 522(f)(1)(A) allows a debtor to avoid the fixing of a judicial lien "on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled"[14] but for the lien itself, which the Supreme Court of the United States in *Owen v. Owen* explained "denotes a state of affairs that is conceived or hypothetical, rather than actual, and requires the reader to disregard some element of reality."[15] Section 522(e) of the Bankruptcy Code, in turn, provides that

> [a] waiver by the debtor of a power under subsection (f) or (h) of this section to avoid a transfer, under subsection (g) or (i) of this section to exempt property, or under subsection (i) of this section to recover property or to preserve a transfer, is unenforceable in a case under this title.[16]

---

[13] *See* 11 U.S.C. § 101(36) ("The term 'judicial lien' means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.").

[14] 11 U.S.C. § 522(f)(1)(A).

[15] *Owen v. Owen*, 500 U.S. 305, 311, 111 S. Ct. 1833, 1837, 114 L. Ed. 2d 350 (1991).

[16] 11 U.S.C. § 522(e).

7

Thus, had the Debtor re-filed her motion to avoid Roberts' lien, my analysis could have ended here.

Nevertheless, 11 U.S.C. § 522(e), which I note applies equally to exemptions claimed under either federal or state law,[17] further provides that:

> A waiver of an exemption executed in favor of a creditor that holds an unsecured claim against the debtor is unenforceable in a case under this title with respect to such claim against property that the debtor may exempt under subsection (b) of this section.[18]

Notably, while 11 U.S.C. § 522(e) expressly refers to only holders of unsecured claims, 11 U.S.C. § 522(f)(1) contains an unqualified prefatory phrase which states "[n]otwithstanding *any waiver of exemptions* . . . ."[19] In *Owen v. Owen*, the Supreme Court interpreted this provision to mean that

> there is no doubt that a state exemption which purports to be available "unless waived" will be given full effect, *even if it has been waived*, for purposes of § 522(f)-the first phrase of which, as we have noted, recites that it applies "[n]otwithstanding any waiver of exemptions."[20]

Reading 11 U.S.C. §§ 522(e) and (f)(1) together, I conclude that a judicial lienholder should be viewed as a "creditor that holds an unsecured claim" for purposes of 11 U.S.C. § 522(e). While this may seem initially counterintuitive, 11 U.S.C. § 522(f)(1)(A) operates

---

[17] *In re Boucher*, 203 B.R. 10, 12 (Bankr. D. Mass. 1996).

[18] 11 U.S.C. § 522(e).

[19] 11 U.S.C. § 522(f)(1) (emphasis added). Section 522(f)(1) of the Bankruptcy Code provides in relevant part:

> Notwithstanding any waiver of exemptions . . . the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled . . . .

*Id.*

[20] *Owen v. Owen*, 500 U.S. at 313 (emphasis in original).

"[n]otwithstanding any waiver of exemptions,"[21] meaning that if a judicial lien hypothetically impairs the exemption, the lienholder's exemption waiver is unenforceable. If the judicial lien is not subject to avoidance under 11 U.S.C. § 522(f)(1)(A) because it does not impair an exemption, then the exemption waiver is irrelevant. Therefore, as a practical matter, there is no circumstance in which an exemption waiver in favor of a judicial lienholder would be enforceable under 11 U.S.C. § 522(e), but not 11 U.S.C. § 522(f)(1)(A).

This result is also consonant with the legislative history and purpose of 11 U.S.C. §§ 522(e) and (f).[22] Generally, the anti-waiver provisions represent a clear departure from the practice under the former Bankruptcy Act, where, so long as state law allowed, exemptions could be waived in favor of particular creditors by agreement.[23] By enacting 11 U.S.C. § 522(e), Congress meant to "prevent frustration of the Bankruptcy Code by standard provisions in contracts of adhesion."[24] Taken as a whole, however, 11 U.S.C. § 522 preserves a debtor's fresh

---

[21] 11 U.S.C. § 522(f)(1).

[22] Both the House and Senate Reports that accompanied the enactment of the Bankruptcy Reform Act of 1978, Pub.L. 95-598, 92 Stat. 2549 (1978), state:

> Subsection (e) protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien. . . . The avoiding power is independent of any waiver of exemptions.

S.Rep. No. 989, 95th Cong., 2d Sess. p. 76 (1978); *see also* H.R.Rep. No. 595, 95th Cong., 1st Sess. p. 362 (1977), *reprinted in* U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862, 6318 (including the same language with respect to subsection (f)). The House Report further states:

> Subsection (e) protects the debtor's exemptions, either Federal or State, by making unenforceable in a bankruptcy case a waiver of exemptions or a waiver of the debtor's avoiding powers under the following subsections.

H.R.Rep. No. 595, 95th Cong., 1st Sess. p. 362 (1977), *reprinted in* U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862, 6318.

[23] *See* 4 Collier on Bankruptcy ¶ 522.07 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

[24] *In re Starkey*, 179 B.R. 687, 692 (Bankr. N.D. Okla. 1995) (comparing the language of 11 U.S.C. § 522(e) relating to the unenforceability of exemption waivers with the language of 11 U.S.C. § 706(a) relating to the unenforceability of waivers of the right to convert a case from Chapter 7).

9

start by preventing a general unsecured creditor from elevating its status to that of a consensual lienholder simply by obtaining a judicial lien and a waiver of either an exemption or the avoidance power of 11 U.S.C. § 522(f)(1).

For the above stated reasons, I conclude the Waiver is unenforceable.

## V. <u>CONCLUSION</u>

In light of the foregoing, I will enter an order overruling the Objection.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: March 18, 2014

Counsel Appearing:

    Dennis R. Brown, Dennis R. Brown, P.C., Framingham, MA,
        for William C. Roberts
    Alex M. Rodolakis, Fletcher Tilton P.C., Hyannis, MA,
        for the Debtor